Anthony R. Bisconti, State Bar No. 269230
tbisconti@bklwlaw.com
**BIENERT KATZMAN LITTRELL WILLIAMS LLP**
601 W. 5th Street, Suite 720
Los Angeles, California 90071
Telephone (213) 528-3400
Facsimile (949) 369-3701

Eric Snyder (admitted pro hac vice)
esnyder@wilkauslander.com
**WILK AUSLANDER LLP**
825 Eighth Avenue, Ste. 2900
New York, NY 10019
Telephone (212) 981-2300
Facsimile (212) 981-2316
*Pro Hac Vice*

*Attorneys for Standard General L.P. Standard General Master Fund, L.P. and P Standard General Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>DOV ARIEH CHARNEY,<br><br>Debtor,<br><hr>STANDARD GENERAL, L.P., a Delaware limited partnership; STANDARD GENERAL MASTER FUND, L.P., a Cayman Islands limited partnership; P STANDARD GENERAL LTD., a British Virgin Islands limited company,<br><br>Plaintiffs,<br><br>v.<br><br>DOV CHARNEY an individual,<br><br>Defendant. | Case No. 2:22-bk-11335-VZ<br><br>Adv. Pro. No.: 2:22-ap-01128-VZ<br><br>Chapter 11<br><br>**JUDGMENT CREDITORS STANDARD GENERAL L.P., STANDARD GENERAL MASTER FUND, L.P., AND P STANDARD GENERAL LTD.'S SECOND AMENDED COMPLAINT OBJECTING TO ENTRY OF DISCHARGE PURSUANT TO 11 U.S.C. § 727** |

Judgment Creditors Standard General, L.P., Standard General Master Fund, L.P., and P Standard General Ltd. (together, "Judgment Creditors") hereby file this second amended complaint objecting to the discharge of Debtor Dov Charney ("Debtor" or "Charney") pursuant to 11 U.S.C. § 727(a)(2) and 11 U.S.C. § 727(a)(4)(A) (the "Second Amended Complaint"). Judgment Creditors allege as follows:

## STATEMENT OF JURISDICTION AND PROCEEDINGS

1. The underlying bankruptcy case (the "Bankruptcy Proceeding") was commenced on March 10, 2022 (the "Petition Date") when Debtor filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code"). On December 12, 2022 (the "Conversion Date"), the Bankruptcy Court entered an order converting the Bankruptcy Proceeding to Chapter 7 of the Bankruptcy Code (the period between the Petition Date and the Conversion Date, the "Chapter 11 Period").

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 151, 157(b)(1) and (2) (J), and 1334.

3. Venue in this Court is proper pursuant to 28 U.S.C. § 1409(a) because this Bankruptcy Proceeding arises under Title 11 of the United States Code.

4. Pursuant to an Order entered on March 2, 2023 [Dkt. # 31], the Court approved the parties' stipulation to the filing of the Second Amended Complaint. Judgment Creditors' Second Amended Complaint is therefore timely.

## PARTIES

5. Judgment Creditors hold three judgments against Charney totaling almost $30 million in principal and far in excess of that when including accrued interest: a judgment for $151,808.16 entered on January 29, 2016 (the "First Judgment"); a second judgment for $92,045.79 entered on September 25, 2017 (the "Second Judgment"); and a third judgment for $29,481,097.60 entered on January 8, 2018, in the Delaware Court of Chancery, and filed in the Superior Court of the State of California (the "Superior Court") on February 16, 2018 (the "Third Judgment") (collectively, the "Judgments").

6. Judgment Creditors bring this action pursuant to 11 U.S.C. § 727(c)(1).

7. On information and belief, Debtor is now, and at all times mentioned herein was, an individual residing within the Central District of California.

## GENERAL ALLEGATIONS

8. From one year prior to the Petition Date (the "Transfer Period") through the Conversion Date, Debtor committed numerous acts to hinder, delay, or defraud Judgment Creditors. During the Transfer Period, the Debtor transferred significant assets from an alter ego to a statutory insider in order to defraud Judgment Creditors. Subsequent to the Petition Date, Debtor's misconduct includes: (i) using his salary, which constitutes Judgment Creditors' cash collateral, to *inter alia*: (a) satisfy a pre-petition claim; and (b) fund a retirement account, which is exempt from creditor enforcement. Debtor made these two payments without either Bankruptcy Court approval or the consent of Judgment Creditors. Finally, Debtor's statement under penalty of perjury that the amount advanced on account of the pre-petition claim would be repaid was a false oath, since the Debtor never intended to have the payment repaid. In addition, the Debtor made numerous false oaths that are also set forth below. As a result of these actions, Debtor should not receive the privilege of a discharge under the Bankruptcy Code.

## BACKGROUND

**A.    Debtor's Transfer of Assets with Intent to Defraud Judgment Creditors**

9. During 2016, the Debtor became the Chief Executive Officer of Los Angeles Apparel, Inc. ("LAA"), which he had founded.

10. Within 90 days after Judgment Creditors obtained the First Judgment, the Debtor organized an LLC which he wholly-owns and controls: Art Commerce & Manufacturing Solutions, LLC ("ACMS"). Debtor, through ACMS, contracted with LAA to have his wages from LAA to be paid to an entity; ACMS (the "ACMS Consulting Contract"). On information and belief, Debtor, ACMS, and LAA executed the Consulting Contract in order to contravene Judgment Creditors' First Judgment against him.

11. During August 2019, the Superior Court deemed ACMS an alter-ego of Charney and added ACMS as a Judgment Debtor to Judgment Creditors' Third Judgment against Charney.

12. After ACMS was added as a Judgment Debtor to the Third Judgment, in January 2021, Charney formed a new consulting contract with another entity he wholly-owned and controlled, Schmatta LA, Inc. ("Schmatta") (the "Schmatta Consulting Contract"). On information and belief, under the Schmatta Consulting Contract, Charney subsequently received compensation and discretionary bonuses of at least $500,000 in 2021.

13. For example, from September 7, 2021 through September 13, 2021, LAA transferred $360,000 to a Wells Fargo checking account held exclusively by Schmatta (the "Schmatta Account").

14. On September 13, 2021, Charney withdrew the sum of $355,030 from the Schmatta Account (the "Schmatta Withdrawal").

15. Less than $15,000 remained in the Schmatta Account after Debtor orchestrated the Schmatta Withdrawal.

16. The Schmatta Withdrawal was not deposited into a bank account owned by the Debtor.

17. On December 28, 2021, when asked at a deposition why he did not maintain a bank account, Charney responded:

> Being a – being a judgment debtor, if you have an account and it gets wiped out, I think it's pretty logical where the judgment debtor says, that's not the safest place to put my money if I'll trying to run my life….I think most people similarly situated would be concerned with this – with that risk.

18. According to the Debtor's Statement of Financial Affairs [Dkt. # 50, L.7], on September 13, 2021, the Debtor paid Moshe Safdie, his uncle, the sum of $250,000 (the "First Safdie Payment").

19. On January 25, 2022, the Superior Court entered an order "assigning to [Judgment Creditors] rights to payments in connection with services Charney provided to LAA…. [and Charney's] assignable rights to future payments from LAA" (the "Assignment Order").

20. During January 2022, according to the Debtor's Schedule 1, Part 1, [Dkt. # 48] the Debtor directed LAA to pay wages to him directly.

21. On February 4, 2022, the Debtor paid Safdie $250,000 (the "Second Safdie Payment", with the First Safdie Payments, the "Safdie Payments"). Statement of Financial Affairs, Q.6 [Dkt #50]

22. On July 26, 2022, the State Court entered an order finding Schmatta to be an alter ego of Charney, as set forth above.

### B. Debtor Uses Cash Collateral without Consent or Bankruptcy Court Approval

23. On January 26, 2022, the Superior Court entered an order assigning Judgment Creditors rights to payments belonging to Charney in connection with services Charney provided to LAA as well as future payments from LAA.

24. During March 2022, Debtor filed his Bankruptcy Schedules.

25. According to Schedule B [Dkt. # 42, Q.16], the Debtor held $17,820 in funds as of the Petition Date.

26. According to Debtor's monthly operating reports ("MORs") filed through October 31, 2022 [Dkt. # 85, 106, 123,143,144,152,160, & 187], the Debtor was paid $258,355 in wages from LAA.

27. According to the MOR's, the Debtor spent $104,073 (the "Spent Funds") of the Cash Collateral through October 31, 2022.

28. The Spent Funds were disbursed without either an order of the Bankruptcy Court or approval by the Judgment Creditors.

29. Subsequent to the Conversion Date, the sum of $229,582.14 was turned over to the Chapter 7 Trustee. [Dkt. # 208, ¶1].

### C. Debtor Pays Pre-Petition Claim, Post-Petition, Without Bankruptcy Court Approval

30. On June 21, 2022, Debtor submitted his Monthly Operating Report for the reporting period ending May 31, 2022 (the "May Operating Report") [Dkt. # 123].

31. The May Operating Report contains a summary of Debtor's deposits and disbursements for the period of May 1, 2022, through and including May 31, 2022 (the "May Deposits and Disbursements Summary").

32. The May Operating Report reveals that during the month of April, Debtor wrote a check for $45,000 to the Internal Revenue Service ("IRS") to satisfy a pre-petition claim (the "IRS Payment").

33. The May Operating Report contains an "Explanation" for the IRS Payment: "when Debtor's counsel discovered the payment in preparation of this MOR and informed Debtor that he was mistaken and should have not made the payment of pre-petition debt, the Debtor agreed to find someone to loan the estate the $45,000 to be given the exact priority as the IRS held payment."

34. The contents of the May Operating Report were filed by the Debtor under penalty of perjury as "true and correct".

35. Debtor did not repay the IRS Payment to his estate during the Chapter 11 Period.

36. The Amended Disclosure Statement filed by the Debtor [Dkt. # 196, pp.15, 41], reflects that the Debtor contemplated reducing the claim of the IRS by $45,000 and did not intend to loan the estate $45,000 to repay the IRS Payment as part of his bankruptcy plan.

37. On December 6, 2022, the Bankruptcy Court converted the Debtor's Chapter 11 case to a Chapter 7, finding: "that property of the estate was used without authority of the Court or notice to creditors, inappropriately, and despite an assertion by the Debtor in Possession that that would be cured, that that transfer would be cured, it hasn't been cured."

38. After the Conversion Date, at the request of the Trustee, the IRS Payment was returned to the Debtor's estate. Dkt. # 227, p.8.

**D.   Debtor Funds an Exempt Retirement Account, Post-Petition, without Bankruptcy Court Approval**

39. On May 21, 2022, Debtor filed his Monthly Operating Report for the reporting period ending April 30, 2022 (the "April Operating Report"). Dkt. # 106.

40. The April Operating Report contains a summary of Debtor's deposits and disbursements for the period of April 1, 2022, through and including April 30, 2022 (the "April Deposits and Disbursements Summary"). Dkt. # 106 at 13.

41. Debtor swore under penalty of perjury that the statements within the April Operating Report are "true and correct."

42. The April Deposits and Disbursements Summary indicates that, on April 21, 2022, Debtor transferred $7,000 from his DIP Account to an IRA he maintained at Fidelity (*See* Dkt. # 65, Schedule B, at 6) (the "Fidelity IRA").

43. Thus, Debtor himself admits that he deposited these funds into an exempt account while the Bankruptcy Proceeding was pending. Dkt. # 65, Schedule B, at 6.

### E. Debtor's False Oaths

44. In addition, on information and belief, Debtor has knowingly and fraudulently made false statements to this Court, as follows:

45. Debtor's sworn "Explanation" that the IRS Payment would be repaid by a loan was false. Debtor did not "find" a lender to repay the IRS Payment during the Chapter 11 Period and he made it clear in the Disclosure Statement that he had no intention of causing the IRS Payment to be repaid.

46. Furthermore, in his original Schedule J, filed in this proceeding on March 24, 2022, Debtor swore under oath that his monthly income was -$2,021.00. Dkt. # 49, Schedule J at 3. Thus, Debtor claimed to have *negative* income.

47. Also on March 24, 2022, Debtor submitted his Official Form 106Dec. Dkt. # 38. In that Form, Debtor swore under penalty of perjury that the statements in his bankruptcy schedules are "true and correct" and verified that he would be subject to fines and imprisonment for making false statements.

48. Judgment Creditors subsequently filed their Motion to Dismiss on April 29, 2022. Judgment Creditors argued, among other things, that Debtor's disclosure of negative income demonstrates that he cannot confirm a plan of reorganization because Debtor cannot satisfy the absolute priority rule and pay all senior creditors' claims in full.

49. In response, on May 11, 2022 – just days before the hearing on Judgment Creditors' Motion to Dismiss – Debtor filed an Amended Schedule J that disclosed a very different income. In the Amended Schedule J, Debtor swore under oath that his monthly gross and net income had increased in less than two months to $15,455.00.

50. To date, Debtor has provided no explanation for why his Amended Schedule J sets forth an income more than 800 percent higher than the income set forth in his original Schedule J filed less than two months before.

51. On information and belief, Debtor therefore made numerous "false oaths or accounts" regarding both his net income and his intention to cause the IRS Payment to be repaid. 11 U.S.C. § 727(a)(4)(A).

52. Accordingly, Charney removed or permitted to be removed from his estate at least $460,000 between one year prior to the Petition Date and the date of filing of this amended complaint.

## FIRST CLAIM FOR RELIEF

**Objection to Discharge-Intent to Hinder, Delay or Defraud Creditors-One Year of Bankruptcy**

**[11 U.S.C. §727(a)(2)(A)]**

53. Judgment Creditors re-allege each and every allegation set forth in paragraphs 1 through 52, inclusive, as though fully set forth herein.

54. The Safdie Payments were made within one year of the Petition Date.

55. The Safdie Payments were made with intent to hinder, delay or defraud Judgment Creditors as well as all of the Debtor's creditors.

56. Accordingly, Debtor should be denied his discharge pursuant to § 727(a)(2)(A) of the Bankruptcy Code.

## SECOND CLAIM FOR RELIEF

**Objection to Discharge-Intent to Hinder, Delay or Defraud Creditors-One Year of Bankruptcy**

**[11 U.S.C. § 727(a)(2)(A)]**

57. Judgment Creditors re-allege each and every allegation set forth in paragraphs 1 through 56, inclusive, as though fully set forth herein.

58. Charney instructed LAA to pay his wages to Schmatta within one year of the Petition Date.

59. Charney's instruction to LAA to pay his wages to Schmatta was made with intent to hinder, delay, or defraud Judgment Creditors as well as all of the Debtor's creditors.

Main Document    Page 9 of 14

60. Accordingly, Debtor should be denied his discharge pursuant to § 727(a)(2)(A) of the Bankruptcy Code.

### THIRD CLAIM FOR RELIEF

### Objection to Discharge-Improper Use of Cash Collateral

### [11 U.S.C. § 727(a)(2)(B)]

61. Judgment Creditors re-allege each and every allegation set forth in paragraphs 1 through 60 inclusive, as though fully set forth herein.

62. The funds received by the Debtor from LAA for wages during the Chapter 11 Period constituted "Cash Collateral", as that term is defined under Section § 363(a) of the Bankruptcy Code.

63. The Debtor used the Cash Collateral on the Spent Funds, including the IRS Payment and the Fidelity Payment.

64. Section 363(c)(2) of the Bankruptcy Code requires the Debtor to obtain either the consent of Judgement Creditors or an order of the Bankruptcy Court to use Cash Collateral.

65. The Debtor used the Cash Collateral without either the consent of Judgment Creditors or approval by the Bankruptcy Court.

66. The unauthorized use of Cash Collateral was made with the intent to hinder, delay, or defraud Judgment Creditors as well as all of the Debtor's creditors.

67. Accordingly, Debtor should be denied his discharge pursuant to § 727(a)(2)(B) of the Bankruptcy Code.

### FOURTH CLAIM FOR RELIEF

### Objection to Discharge – Improper Transfer or Removal of Estate Assets

### [11 U.S.C. § 727(a)(2)(B)]

68. Judgment Creditors re-allege each and every allegation set forth in paragraphs 1 through 67, inclusive, as though fully set forth herein.

69. In his May Operating Report, Debtor submitted his May Deposits and Disbursements Summary.

70. Page 13 of the May Report indicates that "on or about April 15, 2022," Debtor made a $45,000 payment to the IRS to satisfy a pre-petition claim the ("IRS Claim").

JUDGMENT CREDITORS STANDARD GENERAL, L.P., STANDARD GENERAL MASTER FUND, L.P., AND P STANDARD GENERAL LTD.'S SECOND AMENDED COMPLAINT OBJECTING TO ENTRY OF DISCHARGE PURSUANT TO 11 U.S.C. § 727

71. This payment was made over a month after the commencement of this Bankruptcy Proceeding and was not disclosed until *over two and a half months* after this Bankruptcy Proceeding commenced.

72. The funds Debtor used to pay the IRS Claim constituted estate assets as defined by 11 U.S.C. § 541(a)(1) and §1115(c)(2) of the Bankruptcy Code.

73. The estate funds Debtor used to pay the IRS Claim are not exempt property as defined by 11 U.S.C. § 541(a)(1).

74. As such, the bankruptcy estate owned the assets Debtor used to improperly pay the IRS Claim, post-bankruptcy.

75. Further, the funds Debtor used to pay the IRS Claim were subject to the automatic bankruptcy stay under 11 U.S.C. § 362(a), which triggered when Debtor filed this Bankruptcy Proceeding on March 10, 2022. Thus, Debtor was prohibited from using estate assets to satisfy pre-petition claims without Court approval.

76. To date, this Court has entered no order authorizing Debtor to pay any pre-petition claims under 11 U.S.C. § 363(b).

77. Thus, Debtor's conduct unlawfully deprived this Court of jurisdiction over his estate assets under 28 U.S.C. § 1334(e) when he used those estate assets to settle his pre-petition claim.

78. The IRS Payment was made by the Debtor with the intent to hinder, delay, or defraud Judgment Creditors as well as all of the Debtor's creditors.

79. Accordingly, the Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(2)(B).

## FIFTH CLAIM FOR RELIEF

**Objection to Discharge – Improper Transfer or Removal of Estate Assets**

**[11 U.S.C. § 727(a)(2)(B)]**

80. Judgment Creditors re-allege each and every allegation set forth in paragraphs 1 through 79, inclusive, as though fully set forth herein.

81. In his April Operating Report, Debtor submitted his Deposits and Disbursements Summary for the month of April (the "April Summary").

82. The April Summary indicates an opening account balance for the month of April of $21,573.00.

83. As of April 21, 2022, the funds in the DIP Account constituted property of the Debtor's estate pursuant to § 1115(c)(2) of the Bankruptcy Code.

84. The Fidelity IRA is not property of the Debtor's estate under § 541(c)(2) of the Bankruptcy Code.

85. Debtor deposited the $7,000 of bankruptcy estate assets into his IRA account on April 21, 2022—after the commencement of the Bankruptcy Proceeding.

86. The transfer of $7,000 from the DIP account to the Fidelity IRA was made by the Debtor with the intent to hinder, delay, or defraud Judgment Creditors as well as all of the Debtor's creditors.

87. Accordingly, the Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(2)(B).

## SIXTH CLAIM FOR RELIEF

**Objection to Discharge – False Oath (May Monthly Operating Report)**

**[11 U.S.C. § 727(a)(4)(A)]**

88. Judgment Creditors re-allege each and every allegation set forth in paragraphs 1 through 87, inclusive, as though fully set forth herein.

89. The May Monthly Operating Report, which the Debtor swore was true and correct under penalty of perjury, states that Debtor was going to cause the IRS Payment to be repaid.

90. That statement was false as the Debtor took no action to cause the IRS Payment to be repaid to the Debtor's estate.

91. Accordingly, the Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(4)(A).

## SEVENTH CLAIM FOR RELIEF

**Objection to Discharge – False Oath (Schedule J)**

**[11 U.S.C. § 727(a)(4)(A)]**

92. Judgment Creditors re-allege each and every allegation set forth in paragraphs 1 through

91, inclusive, as though fully set forth herein.

93. Judgment Creditors object to the discharge of the Debtor pursuant to 11 U.S.C. § 727(a)(4)(A) because Debtor knowingly and fraudulently made a false oath or account to this Court in his Schedule J.

94. In his original Schedule J, Debtor swore under penalty of perjury that his monthly income was -$2,021.00.

95. Just days before the hearing on Judgment Creditors' Motion to Dismiss, Debtor filed an Amended Schedule J, in which he again swore under penalty of perjury that his monthly net income had increased in less than two months to $15,455.00. To date, Debtor has provided no explanation for why his Amended Schedule J sets forth an income more than 800 percent higher than the income set forth in his original Schedule J filed less than two months before.

96. On information and belief, Debtor either (i) knowingly and fraudulently inflated his income in the Amended Schedule J in an effort to undermine Judgment Creditors' argument that he cannot confirm a plan of reorganization or (ii) knowingly and fraudulently grossly understated his income in his original Schedule J. Debtor therefore made a "false oath or account." 11 U.S.C. § 727(a)(4)(A).

97. Accordingly, the Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(4)(A).

**PRAYER FOR RELIEF**

**WHEREFORE**, Judgment Creditors pray for judgment against the Debtor as follows:

1. On the First Claim for Relief, a denial of Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2)(A);

2. On the Second Claim for Relief, a denial of Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2)(B);

3. On the Third Claim for Relief, a denial of Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2)(B);

4. On the Fourth Claim for Relief, a denial of Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2)(B);

5.  On the Fifth Claim for Relief, a denial of Debtor's discharge pursuant to 11 U.S.C. § 727(a)(4)(A);

6.  On the Sixth Claim for Relief, a denial of Debtor's discharge pursuant to 11 U.S.C. § 727(a)(4)(A);

7.  For the costs and disbursements of this action, including interest according to law; and

8.  For such other and further relief as the Court deems just and proper under the circumstances.

Dated: March 20, 2023         **BIENERT KATZMAN LITTRELL WILLIAMS LLP**

By:   */s/ Anthony R. Bisconti*
      Steven J. Katzman
      Anthony R. Bisconti

Dated: March 20, 2023         **WILK AUSLANDER LLP**

By:   */s/ Eric Snyder*
      Jay Auslander
      Eric Snyder

      *Attorneys for Standard General L.P., Standard General Master Fund, L.P. and P Standard General Ltd.*

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

360 E. 2nd St., Ste. 625
Los Angeles, CA 90012

A true and correct copy of the foregoing document entitled (*specify*): **JUDGMENT CREDITORS STANDARD GENERAL L.P., STANDARD GENERAL MASTER FUND, L.P., AND P STANDARD GENERAL LTD.'S SECOND AMENDED COMPLAINT OBJECTING TO ENTRY OF DISCHARGE PURSUANT TO 11 U.S.C. § 727** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) March 20, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Anthony Bisconti    tbisconti@bklwlaw.com, 7657482420@filings.docketbird.com;docket@bklwlaw.com
- Christopher J Harney    charney@tocounsel.com, stena@tocounsel.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) March 20, 2023, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Hon. Vincent P. Zurzolo
United States Bankruptcy Court
Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1360 / Courtroom 1368
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 3/20/2023 | Anthony R. Bisconti | /s/ Anthony R. Bisconti |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                **F 9013-3.1.PROOF.SERVICE**